UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN KARKOWSKI, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )    Case No. 4:17CV1527 HEA |
| ALLIED PILOTS ASSOCIATION, | ) ) ) |
| Defendant, | ) |

## **OPNNION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment, [Doc. No. 30]. Plaintiff opposes the Motion. For the reasons set forth below, the alternative Motion for Summary Judgment will be granted.

### **Background**

Plaintiff has filed a Second Amended Complaint alleging a breach of the duty of fair representation by Defendant, (Count 1); violation of the Labor-Management Reporting and Disclosure Act, (Count 2); breach of contract, (Count 3); conversion, (Count 4); and unjust enrichment, (Count 5). Plaintiff filed the Second Amended Complaint on behalf of himself and all others similarly situated.

Plaintiff and the Class are pilots at American Airlines, Inc. (American). Plaintiff and Class claim that APA improperly collected and retained 1% agency fees/dues, as set out in APA's Constitution and Bylaws (C&B), from a Global Profit Sharing Plan (the Plan) introduced by American.

**Facts and Background**

Plaintiff is an airline pilot employed by American Airlines, Inc. ("American"), and purports to represent a putative class consisting of all American pilots. APA is a labor organization and the certified collective bargaining representative of the American pilots.

The terms and conditions of employment for American pilots are contained in a collective bargaining agreement between APA and American (the "CBA"). The CBA defines itself as the body of the CBA and all supplements and letters of agreement between the APA and the Company. The CBA provides that the "Agreement" shall supersede and take precedence over all "Agreements" concerning the same subjects previously executed.

Pursuant to Section 25 of the CBA, APA is authorized to receive dues from its members and agency fees from non-member pilots in return for APA's collective bargaining services. The vast majority of American pilots elect to have American withhold dues from the compensation they receive from American,

2

which remits the dues directly to APA. The remaining pilots elect to receive an invoice from APA and directly pay APA each month.

On the subject of dues, the APA's Constitution & Bylaws ("C&B") provides as follows:

> Members shall pay dues at the rate of one percent (1%) on current monthly income. Dues at the rate in effect at the time any such payments are received by the member shall be collected on all contractual pay, including Variable Compensation, cash bonuses, and cash profit sharing.

In 2016, American established the American Airlines Group Inc. Global Profit Sharing Plan (the "Plan") to provide profit sharing awards to American employees who are "Participant[s]" in the Plan in the form of "a lump-sum cash payment on or prior to March 15th of the immediately following Plan Year." The Plan expressly conditioned the issuance of payments to employees represented by a labor union, including the APA, on the requirement that "such union has agreed to the Employees' participation in this Plan."

As the Plan required, on October 20, 2016, APA entered into a letter of agreement with American to that effect, thereby making APA-represented pilots—including Plaintiff—eligible for cash profit sharing distributions from the Plan. The October 2016 LOA confirmed APA's and American's "understanding regarding profit sharing" and provided that it "shall remain in effect for the duration of the Joint Collective Bargaining Agreement dated January 30, 2015."

3

On March 10, 2017, American made its first cash profit sharing distribution pursuant to the Plan. APA received dues based on that distribution, either by deduction from pilot compensation by American or by invoice to pilots by APA. APA did not respond to Plaintiff's demands for the return of the 1% dues attributable to the distribution.

In April 2017, two members of APA's Board of Directors ("BOD") introduced a resolution to refund to each pilot any and all dues/agency fees collected on the cash profit sharing distributions. That resolution included the following whereas clauses:

> WHEREAS, the Company established a profit sharing arrangement … for all employees and offered the Plan to APA for consideration and acceptance; and,
>
> WHEREAS, at the Fall 2016 Board of Directors meeting, the APA Board moved to direct the President "…to sign the profit sharing LOA as presented by the Negotiating Committee."; and,
>
> WHEREAS, dues and/or agency shop fees have been withheld and/or billed to pilots who received compensation under the Plan; and,
>
> WHEREAS, the Association's Officers and Directors desire to not have compensation from the Plan be subject to dues and/or agency fee …

That resolution failed.

In March 2018, American made a second cash profit sharing distribution pursuant to the Plan, on the basis of which APA received dues or agency in the manner set forth above.

On January 2, 2018, American announced its intention to pay a one-time cash bonus of $1,000 to each of its non-executive employees.

Also on January 2, 2018, in a post on the Company's internal website, JetNet, American answered frequently asked questions about the $1,000 cash bonuses, including the following:

> Does this payout require approval by each union?
>
> Yes. We're working with each union on that now and hope to reach agreement soon.
>
> * * *
>
> When will I receive the $1,000?
>
> … This is subject to signed Letters of Agreement with each union.
>
> * * *
>
> Will union dues be deducted from this payout?
>
> Union dues will be deducted for mainline pilots as part of their collective bargaining agreements.

On January 22, 2018, the APA BOD approved and APA executed a letter of agreement with American, Letter of Agreement 18-003 ("January 2018 LOA"), in which APA agreed to a "one-time payment to eligible pilot employees represented by APA" of $1,000 as a "cash bonus." American subsequently paid the cash

5

bonuses in January 2018. APA again received dues or agency fees based on that cash bonus in the manner specified above.

## Legal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556

U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the evidence before the court demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.,* 838 F.2d 268, 273 (8th Cir.1988). The movant "bears the initial responsibility of informing the

district court of the basis for its motion" and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (quotation marks omitted). Since the parties have submitted evidence outside the pleadings, the Court will construe the motion as one for summary judgment. Fed.R.Civ.P. Rule 12(d) on those matters not dismissed.

## Discussion

**Unjust Enrichment and Breach of Contract**

Plaintiff initially argued that his original Petition could be resolved without interpreting the CBA and that the claims were simple state-law tort claims, independent of a federal question. In its Opinion, Memorandum and Order of April 30, 2018, the Court concluded that the Collective Bargaining Agreement ("CBA") between Defendant and American was inextricably intertwined with Plaintiff's state-law claims and that the Railway Labor Act, 45 U.S.C. § 151 *et seq.* completely preempted Plaintiff's state law claims for conversion and unjust enrichment. Furthermore, the Court concluded that Plaintiff's claim for breach of contract failed to allege a breach of the CBA. Plaintiff's Second Amended Complaint again alleges conversion, unjust enrichment, and breach of contract.

For the reasons set forth in the April 30, 2018 Opinion, these claims, Counts 3, 4, and 5, are dismissed.

**Duty of Fair Representation**

The National Labor Relations Act imposes a duty on certified unions to fairly represent their members during collective bargaining. *See Vaca v. Sipes*, 386 U.S. 171, 177-78 (1967) (interpreting sections 7 and 8 of the National Labor Relations Act). A union breaches this duty "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190. To state a claim for breach of the duty of fair representation, a plaintiff must allege enough facts that, if presumed true, permit the inference that there was both a breach and causation. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Anderson v. United Paperworkers Int'l Union*, 641 F.2d 574, 579 (1981). Plaintiff alleges Defendant breached its duty of fair representation by acting arbitrarily and in bad faith when it collected and retained the dues from the Profit Sharing Plan and tax relief bonuses.

A union may be deemed to have acted arbitrarily when the action is "so far outside a wide range of reasonableness that it is wholly irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991) (internal citation omitted) (internal quotation marks omitted).

Defendant's Constitution and Bylaws provides that its members pay dues at the rate of one percent on current monthly income on all contractual pay, *including Variable Compensation, cash bonuses and cash profit sharing*. Defendant and American entered into Letters of Agreement regarding these payments to Plaintiff and other members. Defendant collected dues on the Global Profit Sharing Plan and the one-time bonus, which payments were authorized through the Letters of Agreement regarding these payments. American collected the dues in accordance with the CBA as contractual pay. Contractual pay, according to the C&B includes cash bonuses and cash profit sharing. Plaintiff's interpretation that contractual pay does not include cash bonuses and cash profit sharing would render the inclusion of these in the C&B superfluous. As Defendant correctly argues, a fundamental principle of contract interpretation is to interpret the contract as giving meaning to all terms included. 11 Williston on Contracts § 32:11(4th ed.). *Accord* Restatement (Second) of Contracts § 203 (1981). Indeed, the Letters of Agreement, which are incorporated into the CBA, interpreted the payments as contractual pay. Defendant's actions in withholding the dues were not arbitrary.

With respect to Plaintiff's claim that Defendant acted in bad faith, a plaintiff must prove "fraud, deceitful action, or dishonest conduct" to establish a breach of the duty of fair representation by a union's bad-faith conduct. *Gaston v. Teamsters Local 600, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*,

614 F.3d 774, 778 (8th Cir. 2010) (internal quotation marks omitted). Bad faith is not "[m]ere negligence, poor judgment or ineptitude on the part of the union." *Gaston*, 614 F.3d at 778. A union acts in bad faith when, for example, it deceives members about a known risk of job loss or change to seniority status, or it lies about producing important documents at a hearing. *See Thomas v. Bakery, Confectionery & Tobacco Workers Union Local No. 433*, 826 F.2d 755, 759-61 (8th Cir. 1987).

The undisputed facts establish that the withdrawal of the dues was not hidden, deceitful or dishonest. It was made pursuant to the C&B as part of contractual pay. Indeed, American advised the non-executive employees that the cash bonuses would have the dues deducted from the payout. Plaintiff himself acknowledges he was aware of the deduction by demanding a refund. Nothing in the record establishes any actions by Defendant which can establish it acted in bad faith.

**Labor Management Reporting Disclosure Act**

District courts have subject-matter jurisdiction over LMRDA claims when a plaintiff's rights, as secured by the LMRDA, have been violated. 29 U.S.C. § 412. Plaintiff claims Defendant violated Section 411(a)(3)(A) of LMRDA. Section 411(a)(3)(A) provides, in relevant part:

> [T]he rates of dues and initiation fees payable by members of any labor organization … shall not be increased, and no general or

special assessment shall be levied upon such members, except—

> (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot …

29 U.S.C. § 411(a)(3)(A).

Defendant deducted the dues as defined by the C&B at a rate of 1%. This amount was entirely consistent with the amount that was required to be collected. There was no increase in the rate of dues; the dues were collected on contractual pay as defined in the C&B. As such, there was no violation of the Act. Defendant is entitled to judgment as a matter of law.

**Conclusion**

Based upon the foregoing analysis and the record before the Court, Defendant is entitled to judgment as a matter of law on Counts 1 and 2. Counts 3, 4, and 5 will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment, [Doc. No. 30], is **granted**.

**IT IS FURTHER ORDERED** that Counts 3, 4, and 5 are **dismissed**.

**IT IS FURTHER ORDERED** that summary judgement is **granted** as to

Counts 1 and 2.

A separate judgment is entered this same date.

Dated this 22nd day of March, 2019.

                                               _____
                                                     HENRY EDWARD AUTREY
                                           UNITED STATES DISTRICT JUDGE